In the Matter of BRADFORD J. BROWN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 28, 1992

### APPEARANCES OF COUNSEL

*Mady J. Edelstein* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

No appearance on behalf of respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, Bradford J. Brown, was admitted to the prac-

tice of law in New York by the Second Judicial Department on July 13, 1983. At all times relevant herein, respondent maintained an office for the practice of law within the First Judicial Department.

Respondent was personally served with a notice and statement of charges by the petitioner Committee. Charge one alleged that respondent borrowed $60,000 from his client Mrs. Patricia Tripoli and that his solicitation of the loan from his client without full financial disclosure violated Code of Professional Responsibility DR 5-104 (A) which prohibits entering into a business transaction with a client. Charge two alleged that this conduct violated Code of Professional Responsibility DR 1-102 (A) (4) which prohibits conduct involving dishonesty, fraud, deceit or misrepresentation. Charge three alleged that respondent's failure to satisfy a judgment obtained against him by Mrs. Tripoli or move to vacate or modify it violated Code of Professional Responsibility DR 1-102 (A) (5) which prohibits conduct prejudicial to the administration of justice. Charge four alleged that the writing of two checks to Mrs. Tripoli which were returned for insufficient funds violated Code of Professional Responsibility DR 1-102 (A) (4) which prohibits conduct involving dishonesty, fraud, deceit or misrepresentation. Charge five stated that all of the charged conduct violated Code of Professional Responsibility DR 1-102 (A) (6) which prohibits conduct that adversely reflects on fitness to practice law.

Respondent served an answer in which he admitted that he represented Mrs. Tripoli, that he took the loan in question, and that he made partial repayment. He denied the remaining allegations of the charges.

At a prehearing conference at which respondent appeared *pro se,* the charges were amended to add a new Charge three (commingling) and to renumber Charges four through six. The Amended Charges were served upon respondent at the conference. Respondent admitted all of the Amended Charges with the exception of the newly added commingling charge. Respondent was given an opportunity to file his answer to the Amended Charges and a hearing date was set.

A Hearing Panel convened on June 25, 1991 to hear testimony and receive evidence relating to the Amended Charges. Respondent did not appear but arranged to have his affidavit and a duly executed copy of his deposition transcript of June 7, 1990 delivered to the Committee while the hearing was in

session. The Hearing Panel Chair noted that he had confirmed with respondent that the hearing date was convenient to him and by his delivery of his affidavit to the hearing while it was in session, he further acknowledged that he was aware of the hearing date. Thus, the Hearing Panel Chair found that respondent's absence was voluntary.

Respondent indicated in his affidavit submitted during the hearing that he was affirming his statement made at the prehearing conference that he was not contesting the original charges. On that basis, the Panel found that Charges one, two, four, five and six were sustained.

As to Charge three, Mr. Brown indicated again in his affidavit submitted during the hearing that he was contesting that charge, but while he had been given time to file an answer to the Amended Charges, which included Charge three he had not done so as of the date of the hearing.

Based upon the documentation submitted by staff, and respondent's affidavit and deposition testimony, the Panel made the following findings of fact.

Respondent rendered legal services to Mrs. Patricia Tripoli who consulted respondent on several issues regarding the legal and financial effects of placing her disabled husband in a nursing home. On or about May 1, 1987, respondent asked Mrs. Tripoli to loan him $60,000. Mrs. Tripoli agreed. Respondent drafted a loan agreement between Mrs. Tripoli and himself in which he agreed to repay the sum of $60,000 on August 15, 1987 at an interest rate of 15% per annum. Respondent presented the written agreement to Mrs. Tripoli, received a check for $60,000 and signed the loan agreement.

At the time of the loan agreement respondent had many outstanding debts and there was no indication they were disclosed. Respondent failed to repay the loan and, thus, breached the terms of the loan agreement. It appeared that respondent did not advise his client to consider whether she should retain independent counsel with regard to this loan agreement.

On or about September 17, 1987, respondent requested more time to repay the loan. Mrs. Tripoli agreed to extend his time to pay until October 31, 1987. Respondent requested a second extension of the loan agreement. Thereafter he drafted, signed and had Mrs. Tripoli sign a new loan agreement. The extension agreement called for, among other things, the repayment of the principal amount of $60,000 in monthly installments of

$5,000, beginning October 15, 1987. Under the extension agreement, the interest rate on the principal balance was set at 10% per annum. Again, respondent did not advise that Ms. Tripoli consider retaining independent counsel with regard to her acceptance or signing of the extension agreement. At the time of the extension agreement respondent did not fully disclose his financial status to Mrs. Tripoli. Respondent made partial payment of the loan pursuant to the extension agreement but made no payments after January 1989, leaving a balance due of approximately $43,000 including interest.

On or about June 25, 1988, respondent made out a check payable to Mrs. Tripoli in the amount of $4,756.16 and delivered it to her. This check was written on his attorney business account. The check failed to clear because of insufficient funds. On or about November 19, 1988, respondent wrote a check to Mrs. Tripoli in the amount of $10,000 on his attorney business account and delivered it to her. This check failed to clear because of insufficient funds.

On or about September 1, 1989, Mrs. Tripoli commenced a civil suit against respondent for the unpaid balance of the loan by serving respondent with a summons and complaint. (*Tripoli v Brown,* Index No. 13088/89, Sup Ct, Westchester County.) Respondent failed to answer the complaint. On October 31, 1989, the Supreme Court entered judgment against respondent for $43,770.34.

On December 19, 1989, respondent was served with the judgment of default with notice of entry. As of the date of the hearing, respondent had not satisfied the judgment nor had he moved to vacate or modify it. Respondent received three letters from Mrs. Tripoli's attorney, Joseph A. DiSalvo, Esq., demanding repayment of the loan and asking him not to contact Mrs. Tripoli directly.

In mitigation, respondent stated during his deposition on June 7, 1990 and in his affidavit submitted to the Committee during the hearing, that he had fully disclosed his financial status prior to the loan being made and during the course of the loan, not only to Mrs. Tripoli but to her adult daughters as well. According to respondent everyone was in agreement because the loan served to adjust Mrs. Tripoli's financial situation in a beneficial way regarding medical treatment for her husband, allowing her to maintain significant assets she would otherwise have lost. At the same time, respondent needed the money for a personal business investment. Respon-

dent asserted that when he was unable to make further repayment to Mrs. Tripoli, he made it as simple as possible for her to get a judgment by not answering the complaint in the civil suit.

Respondent stated that he was never deceitful or dishonest with respect to his dealings with Mrs. Tripoli. Respondent asserted that he intends to satisfy the judgment; however, he does not have the funds or the ability to obtain the funds at this time. Respondent also claimed that once Mrs. Tripoli retained an attorney to handle the civil suit he stopped his efforts to repay the loan. According to respondent, the attorney accused him of overreaching and undue influence in obtaining the loan and objected to his speaking directly with Mrs. Tripoli.

Respondent further explained that he is owed fees far in excess of the sum owed to Mrs. Tripoli, which when collected will be used to repay that loan. Respondent asserted that he has already sued several former clients to collect these fees.

With respect to the commingling charge, respondent deposited on June 9, 1987 all of the proceeds of the loan from Mrs. Tripoli into a checking account maintained by him entitled Nihon Services Corp. at Chemical Bank, Account No. 097-029467.

On or about May 4, 1987, respondent drew a check for $2,500 on a bank account of the Nihon Services Corp. made payable to "Bradford J. Brown, Special 1" and deposited this check into an account maintained by him at Chemical Bank, Account No. 097-557927 (the "Brown Account").

Another check was drawn on or about June 2, 1987 for $22,000 on the Nihon account made payable to "McKeon and Brown" and respondent deposited this check into an account maintained by him entitled McKeon and Brown, Special No. 1 at Chemical Bank, Account No. 097-027650 (the "McKeon and Brown account"). On or about June 11, 1987, respondent drew a check for $4,000 on the Nihon account made payable to "McKeon and Brown" and deposited this check in the McKeon and Brown account.

At the time of the deposits of funds from the Nihon account into the McKeon and Brown account, the McKeon and Brown account contained funds belonging to respondent's clients which were to be held by him in escrow.

In the affidavit which respondent submitted during the hearing he acknowledged that the accounts in which these

checks were deposited were escrow accounts. He stated, "[i]n any case, there is no evidence to show that any funds were commingled. It is not unusual for an escrow account to be used to collate funds to be disbursed to other parties as was done in this instance, separate from the context of holding funds in trust, as counsel for the Committee is attempting to infer by the amended charges."

The Hearing Panel found that to the extent that respondent was suggesting that an escrow account may be used to collate personal funds and nonpersonal funds of the attorney, he was seriously in error.

At the conclusion of the hearing, the Hearing Panel unanimously sustained all of the Amended Charges and recommended that respondent be suspended from the practice of law for a period of two years.

The Departmental Disciplinary Committee now seeks an order confirming the Hearing Panel's report and imposing the recommended sanction of suspending respondent from the practice of law for a period of two years.

Respondent was personally served with a copy of the Committee's petition on January 27, 1992. To date, he has not interposed a response.

A review of respondent's admissions, as well as the documentary evidence presented to the Hearing Panel by staff, indicates that there is more than ample support for the Hearing Panel's finding that respondent is guilty of the professional misconduct charged. By soliciting a $60,000 loan from his client without full financial disclosure, respondent violated Code of Professional Responsibility DR 5-104 (A) which prohibits engaging in a business transaction with a client and DR 1-102 (A) (4), which prohibits conduct involving dishonesty, fraud, deceit or misrepresentation. By failing to satisfy the judgment which was entered against him by Mrs. Tripoli or move to vacate or modify it, respondent violated Code of Professional Responsibility DR 1-102 (A) (5) which prohibits conduct prejudicial to the administration of justice. By commingling personal funds with client funds, respondent violated Code of Professional Responsibility DR 9-102 (A) and 22 NYCRR 603.15 (a), which prohibit such conduct. By writing two checks to Mrs. Tripoli which were returned for insufficient funds, respondent violated Code of Professional Responsibility DR 1-102 (A) (4) which prohibits conduct involving dishonesty, fraud, deceit or misrepresentation. Finally, by his

actions respondent also violated Code of Professional Responsibility DR 1-102 (A) (6) which prohibits conduct that adversely reflects on fitness to practice law.

The sanction which has generally been imposed by this court for commingling personal funds with client funds in the absence of other misconduct is censure. *(See, Matter of Greenberg,* 165 AD2d 424.) In the case at bar, since more is involved than simple commingling, a period of suspension is clearly warranted.

In *Matter of Fraser* (128 AD2d 190), which is cited by the Hearing Panel in its report, Mr. Fraser was suspended for one year for borrowing money from clients and their relatives and failure to repay the loans. The court noted that Fraser failed to disclose that he had limited means at the time of the loans, and was in default on other obligations. The court also found that he failed to segregate client funds in an escrow account and that he failed to register and cooperate with the Grievance Committee. Fraser had borrowed a total of $20,000. At the time of the disciplinary proceeding $16,500 plus interest had not been repaid and Fraser had filed for bankruptcy.

In the case at bar, respondent's conduct is more egregious in that respondent borrowed substantially more money and he has failed to honor a judgment of the court which has been entered against him. While respondent was not formally charged with failure to cooperate, he failed to appear at the hearing. In addition, respondent has not interposed a response to this motion by the Committee to confirm the Hearing Panel's report.

Accordingly, the petitioner Disciplinary Committee's motion is granted, the Hearing Panel's report is confirmed and the respondent is suspended from the practice of law for a period of two years, effective as of the date of this order, and until further order of this court.

MILONAS, J. P., ELLERIN, ROSS, ASCH and KASSAL, JJ., concur.

Respondent is suspended from practice as an attorney and counselor-at-law in the State of New York, effective the date hereof.