[909 NYS2d 42]

In the Matter of Leonard Leibowitz, an Attorney, Respondent.
Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, September 28, 2010

### APPEARANCES OF COUNSEL

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Mady J. Edelstein* of counsel), for petitioner.

*Leonard Leibowitz*, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

Respondent Leonard Leibowitz was admitted to the practice of law in the State of New York by the First Judicial Department on December 13, 1965. At all times relevant to these proceedings, respondent has maintained an office for the practice of law within the First Judicial Department, although he currently resides in Florida.

In August 2008, the staff of this Court's Departmental Disciplinary Committee (the Committee) served respondent with a notice of charges that he had violated Code of Professional Responsibility DR 5-104 (a) (22 NYCRR 1200.23 [a] ["Transactions Between Lawyer and Client"]) based on 47 instances, from July 1997 to April 2005, in which he took a "loan" against his monthly retainer from client funds under his control. During the period in question, respondent withdrew and paid to himself, by 47 checks, a total of $368,570.61 in loans from the checking account he maintained for the client in question, the Independent Artists of America (IAA), a labor organization representing ballet dancers. The Committee charged that, although the IAA's vice-president had orally authorized respondent to take such loans before he commenced doing so, the loans were taken without the full disclosure to the client required by DR 5-104 (a) in 1997, and without written disclosure to the client and documentation of the transactions required by DR 5-104 (a) as amended in 1999.*

---

\* In 1997, when the transactions at issue commenced, Code of Professional Responsibility DR 5-104 (a) (22 NYCRR 1200.23 [a]) provided: "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

In 1999, DR 5-104 (a) was amended to provide as follows:

"A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless:

The Committee's notice set forth four charges, to wit: (1) that respondent entered into an improper business transaction with a client under DR 5-104 (a) by initially requesting the IAA's permission to take the loans "without proper disclosure of essential terms of repayment, of his financial status, or advising his client to seek independent counsel"; (2) that he entered into a similarly improper business transaction with a client "[b]y continuing to withdraw funds from his client's business account . . . without proper prior notice or permission from his client [in each instance], and without a writing"; (3) that he entered into a similarly improper business transaction with a client in November 2006 (after the loans had ceased) by presenting the IAA with a promissory note, contract and confession of judgment to document the loans after-the-fact, again without full disclosure and without advising the client to seek independent counsel; and (4) that, through all of the above conduct, he engaged in conduct adversely reflecting on his fitness to practice law in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Respondent's answer admitted the underlying facts on which the charges were based and that he had violated DR 5-104 (a) and DR 1-102 (a) (7) as charged, although he raised an issue as to the amount he still owed on the loans and "denie[d] that [he] did not disclose fully the reason for, and meaning of, the documents" he sent the client in November 2006.

As respondent admitted to the facts underlying each of the charges, the Referee, after a hearing, sustained all four charges and recommended the sanction of a public censure, rejecting both the Committee's request for a three-year suspension and respondent's request for an admonition. The Hearing Panel agreed with the Referee's findings and the censure recommendation.

The undisputed facts as found by the Referee and the Hearing Panel may be briefly summarized. In 1993, respondent formed the IAA on behalf of the dancers of the American Ballet Theatre, whom he had represented since 1979. He continued as

"1. The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;

"2. The lawyer advises the client to seek the advice of independent counsel in the transaction; and

"3. The client consents in writing, after full disclosure, to the terms of the transaction and to the lawyer's inherent conflict of interest in the transaction."

counsel to the IAA based on a monthly retainer fee, which was $2,500 until 2005, when it was increased to $3,500. Respondent was given possession of the IAA's checkbook for its noninterest-bearing business checking account, on which he was a signatory.

In July 1997, respondent, who was facing personal financial difficulties, asked the IAA's vice-president, Lori Wekselblatt, for permission to borrow funds from the union's checking account. Shortly thereafter, Ms. Wekselblatt informed respondent by telephone that he could borrow funds from the checking account. In these conversations, respondent did not specify the amount or terms of the anticipated loan, nor did he advise Ms. Wekselblatt or any IAA officer that his interest differed from that of the union, that he could not give the union advice concerning the loan due to the conflict of interest, or that they should consult with independent counsel concerning the transaction. Respondent also failed to prepare any writing to document the loan or its terms.

From July 1997 until April 2005, respondent drew 47 checks payable to himself on the IAA's business checking account, withdrawing a total of $368,570.61. Although the loan agreement was not reduced to writing, the loans were disclosed in the IAA's annual tax returns and Labor Department filings. Those documents stated that the respondent would repay the loans by foregoing his monthly retainer, which he last drew in September 1998.

In November 2006, after another attorney alerted him to the requirements of DR 5-104 (a), respondent sent Ms. Wekselblatt a loan agreement and promissory note for her signature, which stated that he then owed the IAA $145,348.53, together with five percent annual compound interest on unpaid balances. Ms. Wekselblatt did not sign the documents, telling respondent that she did not agree that he owed interest. As at the inception of the loans, respondent failed in proffering the after-the-fact loan documentation (which also included a payment schedule and a confession of judgment) to advise the IAA that a conflict of interest existed and that the union should consult independent counsel.

In May 2007 (about two years after the last loan was taken), the IAA formally discharged respondent as its counsel. At the request of the Hearing Panel in these proceedings, respondent executed a loan agreement and promissory note, dated May 11, 2009, committing himself to repay the principal amount of $67,500, with interest thereon of $47,277.53. Although the IAA

has declined to sign this document, the Hearing Panel deemed it to constitute "an undertaking by [r]espondent to repay the amounts due according to the schedule provided and subject to the penalties offered."

The Committee now moves to confirm the findings of fact and conclusions of law of the Hearing Panel, but to reject the recommended sanction of public censure and instead to suspend respondent from the practice of law for three years. Respondent asks that he be publicly censured. For the following reasons, we conclude that respondent should be publicly censured.

Respondent plainly committed a serious error of judgment in entering into the oral loan agreement with his client, and thereafter withdrawing funds from the client's checking account pursuant to that agreement, without advising the client of the conflict of interest inherent in the transaction and that the client should seek independent counsel, and without documenting the transactions. However, we see no basis for disturbing the conclusion of the Referee and the Hearing Panel that respondent's culpability is mitigated by the absence of any evidence that his conduct involved fraud, deceit, dishonesty or misrepresentation. His dealings with his client were honest, albeit imprudent, self-serving and contrary to the applicable ethical rules. Courts have generally held public censure to be the appropriate sanction where an attorney is found to have entered into a business transaction with a client in violation of DR 5-104 (a) but did so without engaging in fraud or dishonesty (see *Matter of Fendick*, 31 AD2d 17 [2006]; *Matter of Cohen*, 12 AD3d 29 [2004]; *Matter of Moench*, 222 AD2d 31 [1996]; *Matter of Creaser*, 214 AD2d 201 [1995]; *cf. Matter of Leff*, 275 AD2d 135 [2000] [three-year suspension for attorney who induced client to lend him money by misrepresenting purpose of the loan and gave testimony lacking in candor]; *Matter of Brown*, 180 AD2d 150, 155 [1992] [two-year suspension for attorney who solicited a loan from his client and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, as well as other misconduct]).

Further, we agree with the Referee and the Hearing Panel that weight should be given to respondent's previously unblemished 43-year legal career, to his forthright admission of the underlying facts, his expression of genuine remorse for his missteps, his prior repayment of most of the borrowed funds, and his demonstrated intention to repay the remaining outstanding balance with interest. We also take cognizance of the character

evidence provided by respondent's colleagues, as well as prominent figures from the world of the performing arts, who attest to respondent's reputation for honesty and his high standing in his field of specialization within the law.

Accordingly, the Committee's motion should be granted to the extent of confirming the findings of fact, conclusions of law and recommendation of the Hearing Panel, and respondent should be publicly censured.

SAXE, J.P., FRIEDMAN, SWEENY, NARDELLI and ANDRIAS, JJ., concur.

Respondent publicly censured.